## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PAMELA WILDERMUTH, Heir on
Behalf of Decedent PATRICK EUGENE
SHARON,

       *Plaintiff,*

 vs.                                      Case No. 14-CV-2203-EFM

CONSULTANTS IN PULMONARY
MEDICINE, *et al.*,

       *Defendants.*

### MEMORANDUM AND ORDER

This wrongful death and survival action was filed on April 28, 2014, by *pro se* Plaintiff Pamela Wildermuth for the death of her father Patrick Eugene Sharon. Plaintiff names as defendants Consultants in Pulmonary Medicine, Dominique M. Crain, M.D., Vance R. Burns, M.D., Dennis P. Lawlor, M.D., James K. Bradley, M.D., United Medical Group, Glenn MacKay, M.D., Simir Desai, M.D., Physicians Reference Laboratory, David J. Stahl, M.D., David Rasmussen, M.D., and Olathe Medical Center, Inc. (collectively "Defendants").[1] Defendants have filed multiple motions to dismiss (Docs. 20, 24, 26, 29, and 35), which are currently before the Court. For the following reasons, the Court grants Defendants' motions.

---

[1] An additional ten parties and multiple "John" and "Jane Does" were originally defendants to this action. However, these defendants were previously dismissed by this Court on September 24, 2014, for failure to effect service.

# I.      Factual and Procedural Background

Plaintiff is a California resident, who is an heir-at-law of decedent Patrick Eugene Sharon.  Sharon died on April 20, 2012, at Olathe Medical Center in Johnson County, Kansas. Plaintiff alleges that Defendants are physicians or healthcare providers engaged in the practice of medicine in Kansas.

On March 16, 2011, Sharon presented to his family doctor with a chronic cough, fatigue, and "chest issues that failed to go away."[2] X-rays performed at that time revealed a small pleural effusion mass/infiltrate in the left lower lobe of Sharon's left lung.  Plaintiff states that the treating physician prescribed antibiotics to Sharon for suspected pneumonia, but the antibiotics were ineffective and Sharon's symptoms did not improve.

According to Plaintiff, on April 13, 2011, Defendant Mark Reinsel, M.D., ordered a CT scan for Plaintiff and negligently failed to recognize certain lesions on the scan results as possibly cancerous.  Plaintiff claims that over the course of the next year, additional doctors, who are named as Defendants in this action, evaluated Sharon and did not diagnose him with lung cancer despite him suffering from ongoing symptoms associated with the disease.  While Sharon and his family allegedly expressed their concern that he may be suffering from lung cancer as early as June 2011, one of the Defendant doctors assured the family that "there is no need to worry about this being lung cancer."[3]

On April 3, 2012, Defendant James Bradley, M.D., performed a pulmonary biopsy on Sharon.  Three days later, Sharon and Plaintiff were informed that the biopsy revealed Sharon was suffering from cancer.  On April 19, 2012, Sharon presented at Olathe Medical Center

---

[2] Complaint, Doc. 1, p. 8, ¶ 20.

[3] Complaint, Doc. 1. p. 13, ¶ 37.

Emergency Room with shortness of breath and lower extremity swelling.  Plaintiff told Defendant David Rasmussen, M.D., that "if his pulmonary doctors would of [sic] diagnosed him correctly to begin with my dad would have had [his advance directives] in place, but that is not the case."[4]  Plaintiff further stated that "my father would have had plenty of time to think everything thru [sic] if those pulmonary doctors would of [sic] done their jobs correctly in the first place."[5]  On April 20, 2012, Sharon died from an apparent blood clot.  Plaintiff alleges that she was present at the time of his death.

On April 28, 2014, Plaintiff filed this action, seeking to recover for injuries sustained by Sharon that resulted in his death.  Plaintiff served Defendants on September 24, 2014, more than 120 days after she filed her Complaint.  Plaintiff alleges seven claims against Defendants.  The first claim (Negligence) alleges general negligence by Defendants for failing to "exercise that degree of reasonable standard of care or skill as a reasonably prudent medical professional."[6]  Plaintiff alleges that Defendants' negligent conduct includes, but is not limited to, failing to inform Sharon of findings revealed by radiologists, failing to diagnose Sharon correctly, failing to order proper medical diagnostic tests, and failing to communicate with Sharon and other health care professionals.  The second claim (Failure to Disclose) alleges Defendants "failed to exercise that degree of reasonable standard of care or skill as a reasonably prudent medical professional by failure to disclose all the findings and reports from radiologists and other

---

[4] Complaint, Doc. 1, p. 38, ¶ 117.

[5] *Id.*

[6] Complaint, Doc. 1, p. 41, ¶ 119.

healthcare professionals' working with Mr. Sharon and failing to provide requisite medical care."[7]

The third claim (Wrongful diagnosis) alleges that Defendants "failed to exercise that degree of reasonable standard of care or skill as a reasonably prudent medical professional by failing to diagnose Mr. Sharon correctly."[8]   In the fourth claim (Failure to Inform), Plaintiff alleges that Defendants negligently "failed to inform Mr. Sharon of all relevant medical findings, preventing Mr. Sharon from making decisions under 'informed consent.' "[9]   The fifth claim (Delayed Diagnosis) states that Defendants "had a duty to use reasonable standard of care or skill in requisite medical care for the correct diagnosis and treatment of Mr. Sharon."[10]

In the sixth claim (Loss of Chance for a Better Recovery), Plaintiff asserts that Defendants negligently failed to diagnose cancer and treat Sharon's blood clots resulting in a "lost [] chance to recover."[11]   Finally, the seventh claim (Premature Death) alleges "[p]remature death as the direct results of all above healthcare providers failing to perform their standard of requisite care, which denied Mr. Sharon the ability to live another day and failing to follow standard of care directly caused patient blood clots."[12]

---

[7] Complaint, Doc. 1, pp. 41-42, ¶ 133.

[8] Complaint, Doc. 1, p. 43, ¶ 135.

[9] Complaint, Doc. 1, p. 43, ¶ 136.

[10] Complaint, Doc. 1, p. 44, ¶ 138.

[11] Complaint, Doc. 1, p. 45, ¶ 143.

[12] Complaint, Doc. 1, p. 45-46, ¶ 148.

In response to Plaintiff's Complaint, Defendants filed multiple motions to dismiss. Collectively, Defendants argue that Plaintiff's claims should be dismissed because (1) the claims are barred by the applicable statutes of limitations and (2) Plaintiff lacks capacity as an heir-at-law to bring a survival action on Sharon's behalf.   Defendants Consultants in Pulmonary Medicine, Crain, Burns, Lawlor, Bradley, Shipley, United Medical Group, Mackay, Desai, and Olathe Medical Center also argue that Plaintiff failed to obtain sufficient service of process on them.   In addition, individual Defendants Stahl and Physicians Reference Laboratory assert that Plaintiff failed to plead facts sufficient for the Court to infer that they are liable for any alleged misconduct.   Plaintiff did not respond to Defendants' motions.   Therefore, they are ripe for the Court's decision.

## II.      Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[13]   Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[14]   A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[15]   The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests.[16]

---

[13] Fed. R. Civ. P. 12(b)(6).

[14] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

[15] *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[16] *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.").

Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[17]   Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[18]   If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[19]

Because Plaintiff is pursuing this action *pro se*, the Court must be mindful of additional considerations.   "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[20]  The Court, however, will not "assume the role of advocate for the *pro se* litigant."[21]

### III.   Analysis

#### A.   Statute of Limitations

Plaintiff's complaint asserts six medical malpractice claims (claims one through six) and one wrongful death claim (claim seven).   Defendants collectively contend that these claims should be dismissed because they are barred by the applicable statute of limitations.   "[W]hen a complaint shows on its face that the applicable statute of limitations has run, an action is subject to dismissal for failure to state a claim upon which relief can be granted."[22]   "[A]lthough a statute

---

[17] *Iqbal*, 556 U.S. at 678-79.

[18] *See id.* at 678. ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

[19] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[20] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[21] *Id.* (emphasis added)

[22] *Turner and Boisseau, Inc. v. Nationwide Mut. Ins. Co.*, 944 F. Supp. 842, 844 (D. Kan. 1996).

of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.' "[23]

The statute of limitations for a wrongful death claim and a medical malpractice claim is two years.[24]  A wrongful death claim is deemed to have accrued "on the date of death unless the information from which the fact of death or negligence can be determined was either concealed, altered, falsified, inaccurate, or misrepresented."[25]  In this case, Plaintiff did not file her Complaint until April 28, 2014.  This is more than two years after the date of Sharon's death, which was April 20, 2012.  Plaintiff's Complaint is void of any allegations of falsification or concealment of Sharon's death.  Rather, it shows that Plaintiff was well aware of Sharon's death, as she was present when it occurred.  Therefore, Plaintiff's wrongful death claim is barred by the statute of limitations.

Similarly, Plaintiff's medical malpractice claims are also barred by the statute of limitations.  K.S.A. § 60-513(b) provides guidance as to when a tort claim accrues.  It states:

> [T]he causes of action listed in subsection (a) [*i.e.*, tort claims] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or if the fact of injury is not reasonably ascertainable until sometime after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party.[26]

Here, Plaintiff's claims allege negligence in regard to both the missed cancer diagnosis and the treatment of Sharon's blood clots.  In their motions, however, Defendants only address whether

---

[23] *Radloff-Francis v. Wyoming Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

[24] K.S.A. § 60-513(a)(5) and (a)(7).

[25] *Martin v. Naik*, 297 Kan. 241, 256, 300 P.3d 625, 634 (2013) (citation omitted).

[26] K.S.A. § 60-513(b).

Plaintiff's claims are time-barred with respect to the alleged missed cancer diagnosis. Defendants' fail to address whether Plaintiff's claims are time-barred with respect to the alleged negligent treatment of the blood clots.  The Court will therefore analyze Plaintiff's claims in regard to both allegations of negligent conduct.

With regard to the alleged missed cancer diagnosis, the Court can infer that Plaintiff knew of the missed diagnosis at least as early as April 5, 2012, and as late as April 19, 2012. Plaintiff asserts that she was informed of Sharon's cancer on April 5, 2012, and notes that she and her family were "in shock" over the diagnosis.[27]  Plaintiff also claims that as a result of the missed lung cancer diagnosis, Sharon and his family did not trust doctors and obtained an "outside medical evaluation" prior to his death.[28]  Plaintiff also states that on April 19, 2012, she believed that Sharon would have had his advance directives in order if the pulmonary doctors had "done their jobs correctly in the first place."[29]  Thus, the allegations show that the "fact of injury" was "reasonably ascertainable" more than two years before Plaintiff filed her Complaint.[30]

With regard to the alleged mistreatment of Plaintiff's blood clots, the Complaint alleges that Sharon died on April 20, 2012, due to the clots.  This is the date that Sharon suffered substantial injury, and thus the date that the cause of action accrued.  While Plaintiff may not have been aware of Sharon's cause of death until some later date, the statute of limitations is not triggered by the cause of injury but by Sharon's substantial injury.  Therefore, to the extent

---

[27] Complaint, Doc. 1, p. 33, ¶ 102.

[28] Complaint, Doc. 1, p. 36, ¶ 112.

[29] Complaint, Doc. 1, p. 38, ¶ 117.

[30] K.S.A. § 60-513(b).

Plaintiff's claims allege negligence regarding the mistreatment of Sharon's clots, these claims are also time-barred.

In sum, the Court finds that all of Plaintiff's claims should be dismissed because they are barred by the applicable statute of limitations.

**B.      Lack of Capacity**

Defendants also contend that Plaintiff lacks capacity to bring a survival action on behalf of Sharon's estate for his injuries.  In Kansas, a survival action for injuries suffered by the deceased before death must be brought under K.S.A. § 60-1801 by the administrator of the estate.[31]  Here, Plaintiff has not alleged that she is the administrator of Sharon's estate, and the estate is not a party to the lawsuit.  Thus, Plaintiff also lacks standing to bring claims one through six of her Complaint.

**C.      Insufficient Service of Process**

Defendants argue that Plaintiff's Complaint must be dismissed because she did not obtain sufficient service of process.  "If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."[32]  Fed. R. Civ. P. 4(m) provides an extension of time for service for an appropriate period, if the plaintiff shows good cause for the failure.[33]

Here, Plaintiff filed the Complaint on April 28, 2014.  On May 22, 2014, the Court ordered her to immediately prepare and submit summons to the Clerk for service.  Plaintiff did

---

[31] K.S.A. § 60-1801; *Marler v. Hiebert*, 960 F. Supp. 253, 254 (D. Kan. 1997).

[32] Fed. R. Civ. P. 4(m).

[33] *Id.*

not do so for three months.  Finally, on September 24, 2014, Plaintiff served Defendants.  This is more than 120 days from the filing of the Complaint.  Plaintiff has not shown good cause for her failure to serve process within 120 days of filing her Complaint.  Therefore, her claims must be dismissed.

**C.      Failure to State a Claim**

Defendants Stahl and Physicians Reference Laboratory also assert that Plaintiff's Complaint should be dismissed because it does not allege sufficient facts for the Court to infer that they are liable.  Having already set forth three reasons as to why Plaintiff's claims must be dismissed, the Court declines to address this issue at this time.  Accordingly, the Court grants Defendants' motions.

**IT IS THEREFORE ORDERED** that Physician Reference Laboratory's Motion to Dismiss (Doc. 20) is **GRANTED**.

**IT IS ALSO ORDERED** that Defendant David Stahl, M.D.'s Motion to Dismiss (Doc. 24) is **GRANTED**.

**IT IS ALSO ORDERED** that Defendant Olathe Medical Center, Inc.'s Motion to Dismiss (Doc. 26) is **GRANTED**.

**IT IS ALSO ORDERED** that Defendants Consultants in Pulmonary Medicine, Dominique M. Crain, M.D., Vance R. Burns, M.D., Dennis P. Lawlor, M.D., James K. Bradley, M.D., and Michelle Shipley, ARNP's Amended Motion to Dismiss (Doc. 29) is **GRANTED**.

**IT IS ALSO ORDERED** that Defendant United Medical Group, Et AL., Gleen MacKay M.D., Simir Desai, M.D.'s Motion to Dismiss (Doc. 35) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 13th day of May, 2015.


*Eric F Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE